UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARC S. EHRLICH, Trustee for
Hoffmans Trade Group LLC,

                              Appellant,

        -against-                                    1:17-CV-28 (LEK)

MCLANE GLOBAL, *et al.*,

                              Appellees.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Appellant Marc S. Ehrlich, acting as trustee for Hoffmans Trade Group LLC ("HTG"),

appeals a decision by U.S. Bankruptcy Judge Robert E. Littlefield, Jr., granting summary

judgment for Appellees McLane Global, Jordan Laccetti, and Michael Coakley ("M. Coakley")

and dismissing the Adversary Complaint. Dkt. Nos. 1 ("Notice of Appeal"), 5-8 ("Bankruptcy

Judgment"), 6-1 ("Bankruptcy Order"), 4 ("Designation of Record on Appeal"), 8

("Memorandum"). Appellees filed a Response, Dkt. No. 12 ("Response"), and the Trustee

submitted a Reply, Dkt. No. 14 ("Reply"). For the reasons that follow, the Bankruptcy Order is

affirmed.

## II.     BACKGROUND

HTG is a New York limited liability company whose sole member and owner is Gael

Coakley ("G. Coakley"), M. Coakley's father and a resident of Latham, New York. Dkt. No. 4-9,

at 10–21 ("Trustee's Statement of Material Facts")[1] ¶¶ 2–3; Dkt. No. 4-6, at 56–66 ("Appellees'

---

[1]  Rule 56(c) of the Federal Rules of Civil Procedure provides that a party "asserting that
a fact cannot be . . . disputed must support the assertion by: citing to particular parts of materials

Statement of Material Facts") ¶¶ 3–4. McLane is a Texas corporation headquartered in Houston. Trustee's SMF ¶ 4; Appellees' SMF ¶ 5. Laccetti and M. Coakley previously worked for HTG, Trustee's SMF ¶¶ 28, 32; Appellees' SMF ¶¶ 27, 40, and began working for McLane in May 2013, Trustee's SMF ¶ 46; Dkt. No. 4-12 ("Appellees' Response Statement of Material Facts") ¶ 46. HTG entered bankruptcy on June 28, 2013, and Ehrlich was appointed Chapter 7 Trustee on August 2, 2013. Trustee's SMF ¶ 1; Appellees' SMF ¶¶ 1–2.

HTG was primarily engaged in the business of selling non-perishable food products to food banks throughout the United States. Trustee's SMF ¶ 15; Appellees' SMF ¶ 12. The company was a "food broker," meaning it purchased canned food from suppliers which it then resold to food banks. Trustee's SMF ¶ 17; Appellees' SMF ¶ 14. HTG maintained customer information in electronic and physical files in its Latham office. Trustee's SMF ¶¶ 20–21; Appellees' SMF ¶¶ 20–21. HTG's customer information included contact information for food bank clients, as well as order history and preferences, pricing information, annual consumption data, and rates paid by customers. Trustee's SMF ¶ 36; Appellees' Response SMF ¶ 36; Bankr.

---

in the record." Fed. R. Civ. P. 56(c)(1)(A). The Trustee does not follow Rule 56(c), and fails to provide any record support for a number of the claims in the statement of material facts he submitted to the Bankruptcy Court. E.g., Trustee's SMF ¶¶ 23–25, 27, 46–52. Even more surprising, many of the "undisputed facts" in the Trustee's submission are actually legal conclusions, not facts. Tellingly, the Trustee provides no record citations to support these "facts" either. E.g., Trustee's SMF ¶ 51 ("McLane did not act in good faith when it acquired HTG's employees and Customer information."); id. ¶ 52 ("McLane's conduct alleged above is and was inequitable and without good faith."); id. ¶ 58 ("Yet again, Laccetti wrongfully and illegally accessed his former HTG email account and forwarded a HTG email dated May 8, 2013 to his new email address at McLane."). The Court disregards these unsupported, conclusory assertions. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").

Order at 8–9.[2] In general, food banks' purchasing habits are unpredictable because their need for particular types of food items changes frequently. Appellees' SMF ¶ 26.

During the period relevant to this action, HTG had up to five full time employees, including two salespeople. Id. ¶ 16. Laccetti and M. Coakley began working for HTG in 2010. Trustee's SMF ¶¶ 28, 32; Appellees' SMF ¶¶ 27, 40. Both Laccetti and M. Coakley were "at will" employees of HTG, and not subject to any employment, non-compete, restrictive covenant, or non-solicitation agreements. Trustee's SMF ¶¶ 29, 34; Appellees' SMF ¶¶ 28, 45. Laccetti and M. Coakley's duties primarily consisted of selling food products to HTG's food bank customers. Trustee's SMF ¶¶ 31, 33; Appellees' SMF ¶¶ 30, 43. In this capacity, they maintained frequent contact with HTG's clients, were aware of food banks' purchasing practices, and had access to HTG's customer information. Trustee's SMF ¶¶ 33, 35–36; Appellees' SMF ¶¶ 34, 43.

Before 2010, HTG did not sell directly to food banks. Appellees' SMF ¶¶ 31–32. Because HTG did not have strong relationships with food bank customers, Laccetti identified potential food bank clients through public online sources. Id. ¶¶ 32–33. Laccetti obtained contact information for key food bank employees, as well as purchasing information, through public websites. Id. ¶¶ 33–34.

Like HTG, McLane's Hunger Relief Distribution Network ("HRDN") division is a food broker, and sells food products to food banks nationwide. Id. ¶ 23. In 2012 and early 2013,

---

[2]  The Trustee also claims that HTG's customer information included "trade secrets," Trustee's SMF ¶ 36, a claim Appellees dispute, Appellees' Response SMF ¶ 36. Whether customer information constitutes a trade secret under New York law is a question of fact. Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of N.Y., No. 06-CV-1164, 2010 WL 3907489, at *8 (N.D.N.Y. Sept. 30, 2010) (citing Ashland Mgmt. Inc. v. Janien, 624 N.E.2d 1007, 1013 (N.Y. 1993)). As discussed below, the Trustee has not presented sufficient evidence to allow a reasonable jury to conclude that HTG's customer information qualified as a trade secret.

McLane's HRDN division had only one or two employees selling to food banks. Id. ¶ 25. McLane was also one of HTG's suppliers. Id. ¶ 50. It sold canned food products to HTG, which then resold them to food bank customers. Id.

In 2012 and 2013, HTG's accounts receivables with McLane began to grow. Id. ¶ 51. When HTG filed for bankruptcy in June 2013, it owed McLane $234,718.11 in unpaid invoices. Id. ¶ 52. In early 2013, Todd Frease, McLane's Chief Financial Officer, traveled to HTG's office to discuss the unpaid invoices, and other topics. Id. ¶ 54. During this meeting, Frease and G. Coakley discussed the possibility of McLane acquiring HTG. Trustee's SMF ¶ 38; Appellees' SMF ¶ 53. G. Coakley proposed an acquisition price of $1,500,000.00, Trustee's SMF ¶ 39;[3] Appellees' SMF ¶ 58, which McLane rejected, Trustee's SMF ¶ 40; Appellees' SMF ¶ 61, 63. As part of the negotiations, McLane offered to hire Laccetti and M. Coakley as employees and to engage G. Coakley as a consultant. Trustee's SMF ¶ 43; Appellees' SMF ¶ 61.[4] Ultimately, HTG and McLane were unable to reach an agreement, and McLane withdrew its offer when it learned that HTG was significantly in debt. Appellees' SMF ¶ 63. Unbeknownst to McLane at this time,

---

[3] The Trustee's submissions do not consistently state the proposed acquisition price. Compare Mem. at 4 (describing the proposed price as "One Million Five Hundred and 00/100 ($1,500,00.00 [sic]) Dollars"), with Trustee's SMF ¶ 39 (describing the proposal as "One Million Five Hundred ($1,500,000.00) Dollars"). While it is unclear from the Trustee's papers whether the proposed figure was $1,500,000 or $1,000,500, he did not object to Appellees' representation that the offer was $1,500,000.00, Appellees' SMF ¶ 58, and so the Court accepts this as true, Fed. R. Civ. P. 56(e)(2).

[4] The Trustee disputes paragraph sixty-one of Appellees' Statement of Material Facts, Dkt. No. 5-4, 11–14 ("Trustee's Response Statement of Material Facts") ¶ 2, but does not provide a basis for his objection or "properly address [Appellees'] assertion of fact," Fed. R. Civ. P. 56(e). Therefore, the Court considers paragraph sixty-one of Appellees' Statement of Material Facts to be "undisputed for purposes of the motion." Fed. R. Civ. P. Rule 56(e)(2).

G. Coakley was engaged in a fraudulent scheme of artificially inflating HTG's revenue, which would eventually lead to his arrest and prosecution. Id. ¶ 57.

On or about April 29, 2013, G. Coakley entered a rehabilitation facility for alcohol abuse. Trustee's SMF ¶ 45; Appellees' SMF ¶ 64. Upon entering rehabilitation, G. Coakley stopped operating HTG, and the company's computers and files were delivered to a family attorney. Appellees' SMF ¶¶ 67, 69. Following G. Coakley's admission to rehabilitation, Laccetti and M. Coakley contacted Frease to notify him that G. Coakley was leaving the business and they were seeking employment. Id. ¶ 71. Frease offered them positions at McLane on the condition that they resign from HTG, which they promptly did. Id. ¶¶ 72–73. On May 6, 2013, Laccetti and M. Coakley began working for McLane in an office adjacent to HTG's office. Id. ¶ 75.[5]

HTG entered bankruptcy on June 28, 2013. Trustee's SMF ¶ 1; Appellees' SMF ¶ 1. On January 15, 2014, McLane filed a proof of claim, seeking $234,718.11. Trustee's SMF ¶ 12. On or about July 31, 2015, the Trustee filed an Adversary Complaint against Appellees, "seeking, among other things, monetary damages for causes of action related to the misappropriation of trade secrets." Id. ¶ 7; Appellees' SMF ¶ 8.

The Trustee and Appellees contemporaneously moved for summary judgment. Bankr. Order at 3. On December 22, 2016, the Bankruptcy Court denied the Trustee's motion, granted Appellees' motion, and dismissed the Adversary Complaint. Id. at 18. On January 19, 2017, the Trustee filed a timely notice of appeal of Judge Littlefield's ruling. Notice of Appeal.

---

[5] The Trustee also claims that McLane "immediately began to service all of HTG's customers" upon hiring Laccetti and M. Coakley. Trustee SMF ¶ 49. The Trustee offers no evidence to support this allegation. Id.

### III.    LEGAL STANDARD

On appeal, a district court reviews a bankruptcy court's legal conclusions de novo.

County of Clinton v. Warehouse at Van Buren St., Inc., No. 12-CV-1636, 2013 WL 2145656, at *1 (N.D.N.Y. May 15, 2013) (citing R2 Invs., LDC v. Charter Commc'ns, Inc., 691 F.3d 476, 483 (2d Cir. 2012)). Here, "there are no bankruptcy court findings of fact to which deference should be accorded, because '[o]n a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues of fact to be tried.'" In re T.R. Acquisition Corp., 309 B.R. 830, 835 (S.D.N.Y. 2003) (alteration in original) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Thus, a district court reviews a bankruptcy court's grant of summary judgment de novo. Verna v. U.S. Bank Nat'l Ass'n, No. 15-CV-1127, 2016 WL 5107115, at *2 (N.D.N.Y. Sept. 20, 2016) (Kahn, J.) (citing Schackner v. Breslin Realty Dev. Corp., No. 11-CV-2734, 2012 WL 32624, at *3 (E.D.N.Y. Jan. 5, 2012)). Following review, a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Id.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions in adversary bankruptcy proceedings. Fed. R. Bankr. P. 7056. Rule 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time,

Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." Bell South Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (quoting SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978)). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to identifying genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.    DISCUSSION

The Adversary Complaint states eleven causes of action against Appellees: equitable subordination, misappropriation of trade secrets, breach of the duty of loyalty, unfair competition, unjust enrichment, turnover and accounting, conversion, and four counts of fraudulent transfer under federal and New York law. Dkt. 4-1 ("Adversary Complaint") ¶¶ 52–120. Each of the eleven claims is premised on the allegation that McLane improperly acquired HTG's customer information,[6] which he describes as a trade secret under New York law. Mem. at 6, 17.[7] Therefore, a failure to establish that Appellees improperly obtained HTG's customer information from HTG is fatal to each of the Trustee's claims. Appellees are likewise entitled to summary judgment on the misappropriation count if the Trustee fails to present

_____

[6] The Trustee defines HTG's customer information as "customer contact information (including business phone numbers, names of business's decision makers, cell phone numbers); customer order preferences (including item, quantity, frequency and pricing); customer profiles; trade secrets; wholesale quantity purchase pricing history; recorded detail about each customer; customer invoices; pricing strategies; order histories; annual consumption data; and rates paid by customers." Adversary Compl. ¶ 26.

[7] In his motion for summary judgment, the Trustee appears to have argued that Appellees also misappropriated HTG's "opportunity buy" method. Bankr. Order at 5; see also Dkt. No. 4-10 ("Trustee's Memorandum in Support of Summary Judgment") at 11 (noting that Laccetti "explained in great detail the unique combination of efforts in formula and process [HTG] utilized, called 'opportunity boys' [sic]"). The Bankruptcy Court described the "opportunity buy" method as follows: HTG "would find a food product to buy at a considerable discount and then [its] two salesmen would send out an e-mail blast to the food banks advising them of the limited time opportunity." Bankr. Order at 5. The Bankruptcy Court concluded that the process was not a trade secret under New York law. Id. at 18. The Trustee has not challenged this conclusion on appeal. Mem. Even if he had, such a challenge would fail because the Trustee has presented no evidence that the opportunity buy method was a "unique combination" of information and efforts. Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co, 1 F. Supp. 3d 224, 271 (S.D.N.Y. 2014), aff'd, 610 F. App'x 69 (2d Cir. 2015). In fact, G. Coakley stated in his deposition that there was "[n]othing secret" about HTG's methods. Dkt. No. 10-1 ("G. Coakley Deposition") at 76–77.

evidence that would allow a reasonable jury to find that HTG's customer information constituted a trade secret.

The Bankruptcy Court concluded "as a matter of fact" that HTG's customer information was not a trade secret under New York law and therefore granted Appellees's motion for summary judgment. Bankr. Order at 18. The court held that its factual finding foreclosed the ten additional claims because the Trustee "admitted at oral argument that each of his causes of action are premised upon an alleged misappropriation of trade secrets." Id. at 4. The Trustee disputes the court's recollection that he made such an admission. Mem. at 15–16.[8] The court also found that the Trustee presented "no evidence that [confidential customer information] was conveyed to McLane." Bankr. Order at 15.

The Trustee argues the Bankruptcy Court applied an incorrect summary judgment standard because it did not construe the facts in the light most favorable to the Trustee and failed to draw all reasonable inferences in the Trustee's favor. Mem. at 12. The Trustee further argues that the court improperly held that the failure to demonstrate a trade secret doomed its remaining ten claims. Id. at 16. As the Bankruptcy Court correctly noted, "whether the customer [information] and opportunity buy are trade secrets is a question of fact for the determination of the trier of fact." Bankr. Order at 10. The court nonetheless held that, "[d]rawing all permissible factual inferences in favor of the Trustee, [it could not] conclude as a matter of fact that the

---

[8] The Trustee appears to have understood the Bankruptcy Court's question to have referred only to the misappropriation claim. Mem. at 16. Unfortunately, as the Trustee notes, there is no transcript of the oral argument in the record, id., and so it is not possible for the Court to assess the scope of the Trustee's admission. As explained below, the Court need not address this issue to resolve the Trustee's appeal.

customer [information] and opportunity buy process are trade secrets protectable under New York State Law." <u>Id.</u> at 18.

While the Bankruptcy Court appears to have made a factual finding when it concluded "as a matter of fact" that HTG's customer information was not a trade secret under New York law, Bankr. Order at 18, the court correctly granted summary judgment for Appellees. As the Bankruptcy Court explained, the Trustee presented "no evidence" that HTG's customer information was a trade secret, or that it was conveyed to McLane. <u>Id.</u> at 14–16. Contrary to the Trustee's contention, the court did "draw[] all permissible factual inferences in favor of the Trustee." <u>Id.</u> at 18. But drawing inferences in the Trustee's favor does not mean inventing factual questions where none exist. The Trustee presented no evidence that would permit a reasonable jury to find in its favor, and so the Bankruptcy Court's conclusion was proper.

The Court is unable to assess whether the Bankruptcy Court correctly relied on the Trustee's admission to grant summary judgment on the remaining ten counts because the admission is not reflected in the record. This does not impact the soundness of the court's holding. The Court affirms the Bankruptcy Order with respect to the remaining ten claims because the Trustee failed to present sufficient evidence to allow a jury to find that Appellees ever obtained HTG's customer information, an essential element for each claim.

A.      **Misappropriation of Trade Secrets Claim**

"To state a claim for trade secret misappropriation under New York law, the plaintiff must establish [that] '(1) it possessed a trade secret; and (2) [defendants are] using that trade secret in breach of an agreement, confidence, or duty, or as the result of discovery by improper means.'" <u>Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of N.Y.</u>, No. 06-CV-1164, 2010 WL

10

3907489, at *8 (N.D.N.Y. Sept. 30, 2010) (second alteration in original) (quoting Integrated

Cash Mgmt. Servs. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990)). New York

courts define a trade secret as "any formula, pattern, device or compilation of information which

is used in one's business, and which gives him an opportunity to obtain an advantage over

competitors who do not know or use it." Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118

F.3d 955, 968 (2d Cir. 1997). "It is not simply information as to single or ephemeral events in the

conduct of the business; rather, it is a process or device for continuous use in the operation of the

business." Id.

### 1. Existence of a Trade Secret

New York courts have held that a customer list can constitute a trade secret where

"customers could not be readily ascertained by reference to" public sources. Barone v. Marcisak,

465 N.Y.S.2d 561, 562 (App. Div. 1983). "Generally, where the customers are readily

ascertainable outside the employer's business as prospective users or consumers of the

employer's services or products, trade secret protection will not attach." Leo Silfen, Inc. v.

Cream, 278 N.E.2d 636, 639 (N.Y. 1972). "Conversely, where the customers are not known in

the trade or are discoverable only by extraordinary efforts courts have not hesitated to protect

customer lists and files as trade secrets. This is especially so where the customers' patronage had

been secured by years of effort and advertising effected by the expenditure of substantial time

and money." Id. at 640.

Appellees presented evidence that contact information and purchasing history for many

food banks are publicly available on the website feedingamerica.org. Dkt. No. 4-6, at 7–14

("Frease Affidavit") ¶ 21; id. at 15–21 ("Laccetti Affidavit") ¶¶ 7–8; id. at 22–29 ("M. Coakley

11

Affidavit") ¶¶ 6–7; Dkt. No. 11-15 ("Appellees' Exhibit 11"). Information regarding other food

banks is available through individual food bank websites. Laccetti Aff. ¶ 7; M. Coakley Aff. ¶ 7.

Many food banks also publish additional purchasing history in annual reports. Laccetti Aff. ¶ 7.

Notably, HTG originally obtained much of its customer information by reviewing public

websites. Appellees' SMF ¶¶ 31–34.

The Trustee relies on a two-page declaration and a handful of e-mails to support his

argument that HTG's customer information is a trade secret. Mem. at 11–15. Viewed in the light

most favorable to the Trustee, this evidence does not contradict the facts established by

Appellees and would not allow a reasonable jury to conclude that HTG's customer information

was entitled to trade secret protection.

The Trustee first relies on a five-paragraph declaration from John Merlini, the chief

executive officer of JSL Partners, a former competitor and current creditor of HTG. Dkt. No. 5-4,

at 8–9 ("Merlini Declaration"). Merlini states that "there is value in the customer list" and that

"not all the contact numbers and names of the persons in the food bank industry are publicly

available on the internet nor is that information kept current on the internet." Id. ¶¶ 4–5.

The Bankruptcy Court determined that Merlini's "broad statements" did not raise a triable

issue of material fact. Bankr. Order at 16. The Court agrees. Merlini's statements are simply too

general to allow a jury to conclude that HTG's customer information contained non-public

information. Notably, the declaration does not address whether the customer information actually

included any non-public information. While he asserts that "not all" contact information for all

food banks nationwide is available online, Merlini says nothing about HTG's customer

information specifically. Nor does he claim to believe that HTG's files contained non-public

information. At best, Merlini's general statements about the availability of food bank contact information suggests it is possible that some of the information in HTG's customer information could have been unavailable online. But he does not raise a "genuine issue of material fact," Gallo, 22 F.3d at 1224, regarding the public availability of HTG's customer information. In light of Appellees' evidence that food bank contact information and purchasing history is generally publicly available, and that HTG compiled this information from public sources, Merlini's statements are not sufficient to support a conclusion that HTG's customer information was "not known in the trade or . . . discoverable only by extraordinary efforts." Leo Silfen, 278 N.E.2d at 639. Such a finding would be purely speculative.

Likewise, the Trustee's reliance on certain e-mails sent by Laccetti and M. Coakley is misplaced. The Bankruptcy Court concluded that "[c]ollectively these e-mails do not address whether the customer information is publicly available or easily ascertainable." Bankr. Order at 14–15. The Court agrees that the e-mails cited by the Trustee would not allow a reasonable jury to determine that HTG's customer information was publicly unavailable. In fact, several of the e-mails do not appear to concern HTG at all. For example, the Trustee cites a May 2, 2013 e-mail from Laccetti to McLane employees to argue that "Laccetti sent information to McLane regarding HTG [sic] pending sales from his personal email." Mem. at 6 (citing Trustee's SMF Ex. C). Yet, Appellees presented evidence showing that the orders in this email were in fact orders placed with McLane and already in McLane's possession at the time of Laccetti's e-mail. Dkt. No. 5-1 ("Frease Reply Affidavit") ¶ 3. The Trustee offers no contrary evidence, and the underlying document does not indicate that the orders were confidential. Trustee's SMF Ex. C.

As a result, a reasonable jury could not conclude that the information contained in this e-mail was non-public.

The Trustee also points to a May 7, 2013 email Laccetti forwarded from his HTG e-mail account "containing confidential customer information and customer preferences." Mem. at 7 (citing Trustee's SMF Ex. E). But the e-mail is clearly from one of HTG's suppliers, not a customer. The sender, an employee of a company called Indulac, appears to be stating prices for milk Indulac was selling. Trustee's SMF Ex. E. There is no indication that Indulac is an HTG customer or placed an order with HTG. Quite the opposite. Indulac appears to be selling to HTG, not the other way around. Even assuming a vendor's milk prices are non-public, the Court sees no way a reasonable jury could conclude that such an email contained confidential customer information.[9]

Finally, the Trustee argues that Laccetti improperly forwarded a May 8, 2013 e-mail "containing confidential customer contact information and customer preferences" from his HTG account to his McLane account. Mem. at 8 (citing Trustee's SMF Ex. G). Once again, the Trustee simply misreads the e-mail. The message Laccetti forwarded was sent to him by a McLane employee, and so any information in that e-mail was already in McLane's possession and could not be considered private.[10]

---

[9] Importantly, the Trustee's definition of customer information does not include vendor prices. Adversary Compl. ¶ 26.

[10] Laccetti began working for McLane on May 6, 2013. Appellees' SMF ¶ 75. The May 8 e-mail appears to have been sent to his HTG account inadvertently. See Trustee's SMF Ex. G ("PS—Abby you sent this email to my old email address."). While the e-mail suggests Laccetti maintained access to his HTG account after he began working for McLane, that is not relevant to whether HTG's customer information is a trade secret.

The remaining documents the Trustee cites similarly fail to support his argument that HTG's customer information included non-public information. Based on the evidence offered, no reasonable jury could conclude that the data constituted a trade secret. Appellees are therefore entitled to summary judgment on the misappropriation claim.

### 2. Misappropriation

Even if HTG's customer information qualified as a trade secret, Appellees would still be entitled to summary judgment on the misappropriation claim because the Trustee has presented no evidence that McLane obtained HTG's customer information by "improper means." Member Servs., 2010 WL 3907489, at *8.[11] The Trustee points to several e-mails to argue that Laccetti and M. Coakley "wrongfully and illegally access[ed] [their] former HTG email account[s] and forwarded multiple HTG proprietary emails to McLane." Mem. at 7. Once again, the e-mails cited do not support the Trustee's claim.

The Trustee's reliance on a May 14, 2013 e-mail exchange between M. Coakley and Frease, Mem. at 9–10 (citing Trustee's SMF Ex. K), is misplaced. The e-mail does not show Appellees' "use and transfer of HTG's Customer List and Data," as the Trustee contends. Id. at 9. In fact, the e-mail appears to be a discussion about sales to McLane customers, and there is no indication that any information was transferred from HTG to McLane. Trustee's SMF Ex. K. In the e-mail, M. Coakley states: "We really are psyched to be part of the team. All of our customers are thrilled as well." Id. While these statements could allow a jury to infer that McLane was servicing former HTG clients in May 2013, they do not indicate that M. Coakley provided

---

[11] Indeed, the Trustee has provided no evidence that McLane obtained HTG's customer information by any means, improper or otherwise.

customer order preferences, pricing strategies, or annual consumption data to McLane. Servicing former customers of a competitor, without more, does not suggest McLane obtained HTG's customer information or did so through improper means. See E. Bus. Sys., Inc. v. Specialty Bus. Solutions, LLC, 739 N.Y.S.2d 177, 179 (App. Div. 2002) ("Solicitation of an employer's customers by a former employee through the use of a customer list is not actionable unless the customer list is considered a trade secret or there was wrongful conduct by the employee such as physically taking or copying the employer's files or using confidential information." (citing Amana Exp. Int'l, Inc. v. Pier-Air Int'l, Ltd., 621 N.Y.S.2d 108, 109 (App. Div. 1995))).

The Trustee also highlights a June 1, 2013 e-mail with the subject "'Old' HTG Orders" as evidence that Appellees used HTG's customer information. Mem. at 10 (citing Trustee's SMF Ex. N). While it is true that the e-mail "includes a purchase order from HTG for instant mashed potatoes," Mem. at 10, it was an order that HTG placed with McLane on March 29, 2013, Trustee's SMF Ex. N. McLane is clearly listed on the purchase order under the heading "vendor." Id. Nothing about this document suggests that Appellees improperly acquired the purchase order, and the Trustee provides no evidence to support such an inference. Indeed, it is hard to imagine how Appellees could have misappropriated a purchase order that HTG apparently gave to McLane several months earlier.

Finally, the Trustee notes that on May 15, 2013, Laccetti "sent a detailed email to a former HTG contact regarding pricing sent to Laccetti while he was employed in the prior months at HTG . . . [c]ontain[ing] very detailed information regarding both price per case, per unit, per pack, and shipment information." Mem. at 8 (citing Trustee's SMF Ex. L). If Kunzler was a customer of HTG, this e-mail might suggest that Appellees obtained HTG's customer

information. But, Appellees presented evidence that Kunzler was an HTG vendor, not customer. Frease Reply Aff. ¶ 4; see also Kunzler Quality Meats, Kunzler & Co., Inc., http://www.kunzler.com/products/ (last visited June 7, 2017) (listing meat products sold by Kunzler). The e-mail itself also indicates that Kunzler was in the business of selling food products, not purchasing from food bank suppliers like HTG and McLane. See Trustee's SMF Ex. L (noting that Laccetti would "like to confirm the pricing" provided by Kunzler and "to get McLane Global set up as a customer"). The Trustee has offered no evidence that Kunzler was an HTG customer. Therefore, the May 15 e-mail does nothing to support his argument that Appellees improperly acquired HTG's customer information.

Because the Trustee failed to raise a genuine issue of material fact regarding whether Appellees misappropriated trade secrets, the Bankruptcy Court properly granted summary judgment on this claim.

## B.     The Remaining Ten Counts

The Adversary Complaint states ten additional causes of action against Appellees: equitable subordination, breach of the duty of loyalty, unfair competition, unjust enrichment, turnover and accounting, conversion, and four counts of fraudulent transfer under federal and New York law. Adversary Compl. ¶¶ 52–120. The Bankruptcy Court held that the remaining claims were foreclosed because the Trustee "admitted at oral argument that each of his causes of action are premised upon an alleged misappropriation of trade secrets." Bankr. Order at 4. The Trustee disputes the court's interpretation of his admission, but notes that he cannot recall precisely what he said during oral argument. Mem. at 15–16. Unfortunately, the record does not

include a transcript of the argument, Docket, and so the Court is unable to assess the scope of the admission.

Nonetheless, the Court concludes that Appellees are entitled to summary judgment on the remaining ten causes of action because each requires a showing that Appellees obtained HTG's customer information through improper or unlawful means. As explained above, the Trustee has identified no evidence that would allow a reasonable jury to draw such a conclusion.

### 1. Breach of the Duty of Loyalty

"An employee's fiduciary duty to his employer prohibits him from 'acting in any manner inconsistent with his agency or trust,' and he is 'at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" Gortat v. Capala Bros., 585 F. Supp. 2d 372, 376 (E.D.N.Y. 2008) (quoting Lamdin v. Broadway Surface Adver. Corp., 5 N.E.2d 66, 67 (N.Y. 1936)), aff'd, 568 F. App'x 78 (2d Cir. 2014). The Trustee alleges that Laccetti and M. Coakley breached the duty of loyalty when they "illegally and unlawfully accessed [HTG's] protected email server and stole multiple emails which contained both contact names, contact emails and more importantly, [HTG's] actual customer orders and provided those directly to McLane." Mem. at 20–21. Because the Trustee has made no showing that Appellees actually acquired HTG's customer information, Appellees are entitled to summary judgment on the Trustee's duty of loyalty claim.

### 2. Unfair Competition

The Trustee's unfair competition claim is premised on a misappropriation theory, which "usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc., 515 F.

Supp. 2d 298, 311 (N.D.N.Y. 2007) (Kahn, J.) (quoting Roy Exp. Co. Establishment v. Columbia Broad. Sys., Inc., 672 F.2d 1095, 1105 (2d Cir. 1982)). The Trustee argues that McLane is liable for unfair competition "even if the Customer information had failed to meet the trade secret test" because Appellees improperly obtained HTG's customer information. Mem. at 22. Because the Trustee has made no showing that Appellees actually acquired HTG's customer information, Appellees are entitled to summary judgment on the Trustee's unfair competition claim.

### 3. Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must establish that the defendant "hold[s] property 'under such circumstances that in equity and good conscience he ought not to retain.'" Simonds v. Simonds, 380 N.E.2d 189, 194 (N.Y. 1978) (quoting Miller v. Schloss, 113 N.E. 337, 339 (N.Y. 1916)). The Trustee argues that Appellees were unjustly enriched because "[t]hrough unlawful means, McLane repeatedly invaded [HTG's] electronic server and obtained [HTG's] Customer information, including customer contacts, customer email addresses and customer order preferences[,] violated the Debtor's property rights and unjustly enriched McLane at [HTG's] expense." Mem. at 23. Because the Trustee has made no showing that Appellees actually acquired HTG's customer information, Appellees are entitled to summary judgment on the Trustee's unjust enrichment claim.

### 4. Turnover and Accounting

The Trustee argues that "the profits [gained from HTG's] Customer information," Mem. at 24, constitute "profits of or from property of the estate" under 11 U.S.C. § 541 and are therefore subject to turnover pursuant to 11 U.S.C. § 542. Like the Trustee's other claims, this cause of action hinges on the allegation that "McLane has on numerous occasions obtained

19

[HTG's customer information] by improper and unlawful means." Mem. at 23. Because the

Trustee has made no showing that Appellees actually acquired the customer information,

Appellees are entitled to summary judgment on the Trustee's turnover and accounting claim.

### 5. Conversion

"A conversion takes place when someone, intentionally and without authority, assumes or

exercises control over personal property belonging to someone else, interfering with that person's

right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 860 N.E.2d 713, 717 (N.Y.

2006) (citing State of New York v. Seventh Regiment Fund, 774 N.E.2d 702 (N.Y. 2002)). The

Trustee claims that McLane converted HTG's customer information by "wrongfully" taking

possession of it. Mem. at 24. Because the Trustee has made no showing that Appellees actually

acquired HTG's customer information, Appellees are entitled to summary judgment on the

Trustee's conversion claim.

### 6. Fraudulent Transfer Claims

The Trustee alleges four counts of fraudulent transfer under New York and federal law.

Adversary Compl. ¶¶ 99–120. Each of these claims is premised on the allegation that "Laccetti

and M. Coakley[] fraudulently conveyed the Customer information to McLane." Mem. at 25;

accord Adversary Compl. ¶¶ 102, 110, 113–14, 117–19. Because the Trustee has made no

showing that Appellees actually acquired HTG's customer information, Appellees are entitled to

summary judgment on the Trustee's fraudulent transfer claims.

### 7. Equitable Subordination

Under Section 510 of the Bankruptcy Code, a court may, "under principles of equitable

subordination, subordinate for purposes of distribution all or part of an allowed claim to all or

part of another allowed claim." 11 U.S.C. § 510(c). "Equitable subordination is an extraordinary remedy that is to be used sparingly." <u>Kalisch v. Maple Trade Fin. Corp.</u>, 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008). The Trustee argues that McLane's proof of claim should be subordinated because it "utilized the insider status of Laccetti and M. Coakley to obtain the Customer information." Mem. at 28. Because the Trustee has made no showing that Appellees actually acquired HTG's customer information, Appellees are entitled to summary judgment on the Trustee's equitable subordination claim.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the December 27, 2016 Judgment and Order (Dkt. No. 5-8) of the Bankruptcy Court granting Appellees' motion for summary judgment and dismissing the Adversary Complaint in its entirety is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      June 19, 2017
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

21